### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF OKLAHOMA

KELLY WARREN JOHNSON,              )
                                   )
                Plaintiff,         )
                                   )
v.                                 )    Case No. CIV-20-209-RAW-KEW
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
                Defendant.         )

### REPORT AND RECOMMENDATION

Plaintiff Kelly Warren Johnson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was

---

[1]    Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 48 years old at the time of the ALJ's decision. Claimant completed his education through the ninth grade with special education classes. Claimant has no past relevant work. Claimant alleges an inability to work beginning January 10, 2015

3

due to limitations resulting from short term memory loss, headaches, anxiety, major depression, lower back problems, asthma, chronic obstructive pulmonary disease ("COPD"), and a neck fracture.

## Procedural History

On March 2, 2018, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On July 29, 2019, Administrative Law Judge ("ALJ") Lantz McClain conducted an administrative hearing Tulsa, Oklahoma. On August 8, 2019, the ALJ issued an unfavorable decision. On April 24, 2020, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform light work with limitations.

## Error Alleged for Review

4

Claimant asserts the ALJ committed error in (1) failing to develop the record; and (2) failing to consider all of Claimant's impairments.

## Duty to Develop the Record

In his decision, the ALJ determined Claimant suffered from the severe impairments of asthma, degenerative disc disease, depression, and anxiety. (Tr. 14). The ALJ concluded that Claimant retained the RFC to perform light work except that he must avoid concentrated exposure to dust and fumes ("work in an environment as clean as an ordinary Wal-Mart"), and he could perform simple repetitive tasks while only occasionally interacting with the public. (Tr. 17).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of electronics assembler and packer-inspector, both of which were found to exist in sufficient numbers in the national economy. (Tr. 23). As a result, the ALJ found Claimant was not disabled since March 2, 2018, the date that the application was filed. Id.

Claimant contends that the ALJ failed to fully develop the record, thus depriving him due process. At the administrative hearing, Claimant's representative stated

Judge, a consultative examination has not been done in
this case, either physical or mentally, and be our
position it may be appropriate to send him out and have
some neurocognitive testing done to determine the extent
of his brain injury.

(Tr. 33).

The representative reiterated the request at the conclusion
of the hearing.   The ALJ acknowledged the request without ruling
upon it and concluded the hearing.   (Tr. 59-60).

In his decision, the ALJ stated

At the hearing, Mr. Ash requested the claimant be sent
out for neurocognitive testing, alleging the claimant
suffered a head injury, and so this is needed.   However,
mental record appear (sic) adequate (See Exhibits 6F and
7F pg.7).   Therefore, the request is denied.

(Tr. 12).

Exhibit 6F in the record is Claimant's medical records from
a visit to the emergency room at St. John Sapulpa from December
12, 2012.   The Chief Complaint is described as Claimant engaging
in a fight with three other men wherein he was struck repeatedly
on his head.   He complained of a "pounding headache" and
intermittent double vision.   (Tr. 462).   A CT scan was ordered of
Claimant's brain as well as facial and cervical spine areas.   (Tr.
463).

The CT scan showed

An acute subdural hematoma . . . along the right cerebra
convexity neat the vertex with maximum thickness of 1.1

6

cm.  This causes minimal mass effect on the adjacent
brain.  The ventricles, sulci and the cisterns are
otherwise normal.  The gray and white matter
differentiation in the brain is otherwise maintained.
No intra or extra-axial fluid collections are seen.  No
midline shift is seen.  The posterior fossa appears
unremarkable.  The visualized orbits, the paranasal
sinus and the bony cranium appears unremarkable.
Deformity of the anterior wall of the right maxillary
sinus my be secondary to old trauma.

(Tr. 465).

The diagnosis upon discharge was a concussion and subdural

hematoma.  (Tr. 468).  He was told to follow up with Allen

Rosenfeld or the emergency department if his condition worsened.

(Tr. 469).

Claimant returned to the emergency department on December 17,

2012.  He complained that he continued to have a pounding headache

and had vomited.  No other symptoms were noted.  (Tr. 476).  The

emergency department noted that Claimant did not follow up with a

neurologist/neurosurgeon.  He had filled his pain medication but

not the nausea medicine.  He exhibited no neurological deficits.

A further CT scan was performed.  (Tr. 478).

The additional CT scan revealed

There has been no significant interval change in the
appearance of the brain over the past 5 days.  A
persistent right frontal parietal extracerebral fluid
collection of blood density is again noted.  The
adjacent brain parenchyma remains unchaged and within
normal limits.  There is no significant mass effect or
edema.  Midline structures remain normal.

> The ventricles are normal in size, contour, and position. The brainstem and posterior fossa are unremarkable.
>
> IMPRESSION:
> Stable right frontal parietal subdural hematoma. No significant mass effect or edema.

(Tr. 478).

Exhibit 7F in the record to which the ALJ refers in his decision are medical records from the Claremore Indian Hospital. Claimant went to the hospital on July 18, 2018, July 30, 2018, July 31, 2018, September 27, 2018, October 24, 2018, October 31, 2018, November 19, 2018, January 31, 2019, March 1, 2019, March 7, 2019, and April 3, 2019, Claimant went to the hospital complaining of chronic low back pain or respiratory problems. (Tr. 483, 488, 492, 499, 505, 515, 522, 530, 537). No reference was made in this record of any complaint stemming from this 2012 brain injury.

Claimant apparently suffered a second head injury in September of 2016 which resulted in a visit to the hospital. A head CT scan revealed

> The ventricular system is normal. No shift of the midline or mass effect. No extra-axial fluid collections are demonstrated and the posterior fossa structures are intact. Normal brain parenchymal attenuation. No evidence for acute hemorrhage or territorial infarction. The calvarium is normal. The imaged paranasal sinuses are predominantly clear. Intracranial atherosclerosis is present.

IMPRESSION:

1. No acute intracranial abnormality.

(Tr. 292).

Claimant suggests that the ALJ was under an obligation to further develop the record by employing a consultant to further evaluate Claimant's intracranial atherosclerosis. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court,

however, is not required to act as a claimant's advocate.  Henrie,
13 F.3d at 361.

The duty to develop the record extends to ordering
consultative examinations and testing where required.
Consultative examinations are used to "secure needed medical
evidence the file does not contain such as clinical findings,
laboratory tests, a diagnosis or prognosis necessary for
decision."  20 C.F.R. § 416.919a(2).  Normally, a consultative
examination is required if

> (1) The additional evidence needed is not contained
> in the records of your medical sources;
>
> (2) The evidence that may have been available from
> your treating or other medical sources cannot be
> obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical
> evidence that we need is not available from your treating
> or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or
> insufficiency in the evidence must be resolved, and we
> are unable to do so by recontacting your medical source;
> or
>
> (5) There is an indication of a change in your
> condition that is likely to affect your ability to work.
>
> 20 C.F.R. § 416.909a(2)(b).

None of these bases for ordering a consultative examination
exists in the record.  Claimant did not provide any evidence to

link his then existing condition with his limitations. He did not seek further medical treatment for the condition. Although he now states that his headaches were attributable to this condition, he previously stated that his headaches began in 2014 after he was hit by a car. (Tr. 371). His memory problems which he now contends arose from intracranial atherosclerosis existed as far back as 2013-14. (Tr. 546). The medical record was sufficiently developed for the ALJ to evaluate Claimant's medical conditions. The ALJ did not violate his duty to develop the record by not ordering further medical evaluations.

### Consideration of Claimant's Impairments

Claimant also contends the ALJ failed to consider the limitations posed by his headaches, high blood pressure, and problems with memory, focus, and concentration which Claimant states "logically stem from his intercranial atherosclerosis" at step two. The logic apparent to Claimant does not appear in the medical record. As stated, Claimant did not seek medical treatment for the condition.

Moreover, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the

11

regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628–629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291–292, (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." Flaherty v. Astrue, 515 F.3d 1067, 1070-71 (10th Cir. 2007) quoting Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).

In this case, the ALJ did not end the sequential evaluation at step two by finding Claimant had no severe impairments. Moreover, he considered Claimant's memory problems (Tr. 18), blood pressure problems (Tr. 19), and concentration and persistence (Tr. 20) in the evaluation of the subsequent steps. Since he did not deny benefits at step two based upon the lack of any severe impairments, the ALJ's failure to include these conditions does not constitute reversible error.

Claimant also challenges the ALJ's decision for not including moderate limitations in concentration, persistence, or pace in the RFC when he found such a limitation at step three in evaluating the paragraph B criteria. This Court rejects this notion as it is unsupported by the regulations and the case authority in this Circuit. The social security ruling on assessing a claimant's RFC cautions that "[t]he adjudicator must remember that the

limitations identified in the 'paragraph B' ... criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Soc. Sec. R. 96-8p. The Tenth Circuit has specifically found that the failure to include a moderate limitation in social functioning, for example, in the RFC based solely upon the finding at step three is not error. Beasley v. Colvin, 520 Fed. Appx. 748, 754 (10th Cir. 2013). The court also declined the claimant's invitation to read Franz v. Astrue, 509 F.3d 1299, 1303 n.3 (10th Cir. 2007) as "requiring an ALJ's RFC assessment to mirror his step three-findings," finding such language as "dicta." Id. at 754 n.3.

Claimant cites to the case of Wells v. Colvin, 727 F.3d 1061, 1065 n.3 (10th Cir. 2013) in support of his argument that the paragraph B criteria limitations must be included in the hypothetical questions posed to the vocational expert. The footnote simply does not state this position. The court found a mild restriction should have been considered at step two and subsequent steps. It does not require or even suggest the inclusion of the restrictions in the questioning of the expert. This Court finds no error in the failure to include the referenced

14

limitations at step two or in the hypothetical questioning of the vocational expert at step five.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of September, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE